**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

MYISON IAEENE ELLIS,     )
            )
    *Petitioner,*    )
            )
   v.        )
            ) No. 1:25-cv-866 (PTG/WEF)
            )
CHADWICK DOTSON,     )
            )
    *Respondent.*   )
            )

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Petitioner Myison Iacene Ellis's Petition for a Writ of Habeas Corpus (the "Petition"). Dkt. 1. Petitioner seeks this Court's review, under 28 U.S.C. § 2254, of the constitutionality of his November 20, 2020 convictions in the Circuit Court of Fauquier County, Virginia. *Id.* There, Petitioner was convicted of first-degree murder, conspiracy to commit robbery, and use or display of a firearm in the commission of a felony. *Id.* On June 18, 2025, Respondent filed a Motion to Dismiss (the "Motion") and a Rule 5 Answer with supporting briefs and exhibits. Dkts. 8-10. The Court advised Mr. Ellis of his right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Dkt. 13. On August 4, 2025, Petitioner responded by filing his Objections to Respondent's Motion to Dismiss with exhibits. Dkts. 14, 14-2. The matter is fully briefed.[1] For the reasons that follow, Respondent's Motion to Dismiss (Dkt. 8) is **GRANTED in part** and **DENIED in part**. The petition will be dismissed with prejudice as to Claims 1-5, and the motion will be denied without prejudice as to Claim 6.

---

[1] Respondent did not address Claim 6 of Mr. Ellis' Petition in his Motion to Dismiss (Dkt. 9).

## I. Background

On March 6, 2020, after a three-day trial, Mr. Ellis was found guilty of first-degree murder, in violation of Virginia Code § 18.2-32; conspiracy to commit robbery, in violation of Virginia Code § 18.2-22; and use or display of a firearm in the commission of a felony, in violation of Virginia Code § 18.2-53.1. *Commonwealth v. Ellis*, Case Nos. CR19000432-00, CR19000433-00, CR19000434-00. The court sentenced Mr. Ellis to a total term of fifty-one years in prison. Dkt. 1 at 2.

Mr. Ellis, by counsel, directly appealed his convictions to the Virginia Court of Appeals. *Ellis v. Commonwealth*, No. 1390-20-4, 2022 WL 4349060 (Va. Ct. App. Sep. 20, 2022). He alleged his conviction was tainted by six errors:

> I. The Trial Court erred and abused its discretion in denying Ellis's motions for continuance on February 28, 2020, and March 2, 2020, which resulted in prejudice to him. . . .
> II. The Court's error in denying Ellis the right to treat Karen Farmer as an adverse witness, thus denying Ellis the ability to impeach her, was an error of law and further prohibited him from motioning to strike the witness's testimonial evidence.
> III. The Court erred in denying Appellant the ability to rehabilitate the credibility of his alibi witness.
> IV. The Court's error in violating Ellis's Sixth Amendment right to confrontation and its refusal to allow full, meaningful, and/or effective cross-examination was not harmless and precluded him from presenting a meaningful defense such that it imperiled the reliability of the outcome.
> V. The Commonwealth erroneously failed to provide exculpatory discovery to Appellant which resulted in a true Brady violation.
> VI. The Court erred in denying Ellis's motion to strike at the conclusion of the Commonwealth's evidence, and renewed motion to strike at the conclusion of all evidence.

Dkt. 10-2 at 26-27 (internal citations omitted).

On September 20, 2022, the Virginia Court of Appeals affirmed Mr. Ellis' convictions. *Ellis*, 2022 WL 4349060. Mr. Ellis, by counsel, appealed to the Virginia Supreme Court, alleging the same errors. Dkt. 10-3 at 13-15. On May 3, 2023, the Court refused his petition. *Ellis v.*

2

*Commonwealth*, No. 220763 (Va. May 3, 2023) (unpublished).

On July 19, 2023, Mr. Ellis, proceeding *pro se*, filed a state habeas petition in the Circuit Court of Fauquier County. Dkt. 10-4 at 24-55. He sought relief on the following grounds:

> (1) "Trial counsel rendered ineffective assistance when she failed to serve 21-day notice on the Commonwealth of her intent to introduce DNA evidence." . . .
> (2) "Trial counsel rendered ineffective assistance of counsel by failing to utilize the criminal history and obtain a transcribed copy of the four (4) interviews between Robinson and the state for impeachment purposes." . . .
> (3) "Trial counsel rendered ineffective assistance of counsel when she failed to investigate and subpoena Mable Lanham as a rebuttal witness to discredit Lucretia Robinson." . . .
> (4) "Trial counsel rendered ineffective assistance when she failed to highlight the numerous inconsistencies in Karen Farmer's testimony." . . .
> (5) "Trial counsel rendered ineffective assistance by failing to object and preserve the issue of [the trial] court limiting impeachment of Karen Farmer."

*Id.* at 29, 33, 38, 41, 43.

On November 9, 2023, the circuit court denied Mr. Ellis relief and dismissed his petition on the grounds that none of the claims satisfied the framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). Dkt. 10-4 at 8, 11, 14, 16, 19. Mr. Ellis, proceeding *pro se*, appealed to the Virginia Supreme Court, which refused his petition for appeal. *Ellis v. Dotson*, No. 240092 (Va. Aug. 19, 2024) (unpublished).

## II. Present Petition

On April 29, 2025, Mr. Ellis, proceeding *pro se*, filed a federal habeas petition in this Court pursuant to 28 U.S.C. § 2254. Dkt. 1. He raised six claims:

> [1] "Trial counsel rendered ineffective assistance when she failed to serve 21-day notice on the Commonwealth of her intent to introduce DNA evidence." . . .
> [2] "Trial counsel rendered ineffective assistance by failing to utilize the criminal history and obtain a transcribed copy of the four (4) interviews between Robinson and the state, for impeachment purposes." . . .
> [3] "Trial counsel rendered ineffective assistance when she failed to investigate and subpoena Mable Lanham as a rebuttal witness to discredit Lucretia

Robinson." . . .

[4] "Trial counsel rendered ineffective assistance when she failed to highlight the numerous inconsistencies in Karen Farmer's testimony." . . .

[5] "Trial counsel rendered ineffective assistance by failing to object and preserve the issue of the trial court limiting impeachment of Karen Farmer." . . .

[6] "The Virginia state courts violated Mr. Ellis' Sixth Amendment Confrontation Clause rights when they affirmed the trial court's improper limitation of Mr. Ellis' impeachment of witness Karen Farmer on cross-examination[.]"[2]

Dkt. 2 at 5, 9, 13, 16, 18, 21.

### III. Exhaustion and Default

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires a petitioner to present his federal claims to the appropriate state court, giving the state court "a meaningful opportunity to consider allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). A claim has not been "fairly presented to the state courts" if the claim is raised in "a procedural context in which its merits will not be considered." *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989). In Virginia, exhaustion requires a federal habeas petitioner to have presented the same factual and legal claims raised in his § 2254 petition to the Virginia Supreme Court. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (exhaustion requires a petitioner to present "both the operative facts and the controlling legal principles" to the state court) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). The petitioner bears the burden of proving exhaustion. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

---

[2] The quoted text appears in the Petition in all capital letters. Dkt. 2 at 21. Only capitalization is modified here.

Here, Respondent acknowledges that Petitioner has exhausted Claims 1 through 5 of the Petition because each was raised in Petitioner's state habeas proceedings. Dkt. 10 at 5. However, Respondent did not address Claim 6, which was Assignment of Error IV in Petitioner's direct appeal. *See* Dkts. 8 to 10, 10-2 at 27. As a result, the Court proceeds on Claims 1 through 5, will deny the Motion as to Claim 6, and will order Respondent to address Claim 6 in a supplemental response.

**IV. Standard of Review**

Under the Antiterrorism Effective Death Penalty Act of 1996 ("AEDPA"), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (quoting 28 U.S.C. § 2254(d)(1)). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

To show unreasonableness, a petitioner must demonstrate that there is "no reasonable basis" upon which the state court judgment could rest. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see Renico v. Lett*, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)); *see Harrington v. Richter*, 562 U.S. 86, 103 (2011) (holding

that a state court's ruling on the federal claim is unreasonable only when the ruling lacked justification "beyond any possibility of fairminded disagreement").

This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal quotation marks and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[F]ederal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)); *see Schriro*, 550 U.S. at 473-74. The reviewing federal court is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Ineffective assistance of counsel claims are reviewed under the highly demanding two-prong test established in *Strickland*. Under *Strickland*, a petitioner bears the burden of demonstrating that their attorney's performance was deficient and that the petitioner was prejudiced as a result. *See Strickland*, 466 U.S. at 687. *Strickland*'s first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A federal court reviewing a habeas petition operates under the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689. The "basic lesson" of *Strickland* is that "[j]udicial scrutiny of counsel's performance must be highly deferential." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success," as opposed to other claims. *Id.*

6

*Strickland*'s second prong, the "prejudice" inquiry, requires the petitioner to show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Valentino v. Clarke*, 972 F.3d 560, 580 (4th Cir. 2020) (quoting *Harrington*, 562 U.S. at 86). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays v. Hines*, 592 U.S. 385, 392 (2021) (alteration in original) (quoting *Knowles*, 556 U.S. at 123)).

The United States Supreme Court has characterized "a *Strickland* claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." *Knowles*, 556 U.S. at 123; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016). Accordingly, the Fourth Circuit has held that "AEDPA and *Strickland* . . . provide 'dual and overlapping' lenses of deference, which we apply 'simultaneously rather than sequentially.'" *Crockett v. Clarke*, 35 F.4th 231, 242 (4th Cir. 2022) (quoting *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020)). "This double-deference standard effectively cabins our review to a determination of whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Morva v. Zook*, 821 F.3d 517, 528 (4th Cir. 2016) (internal quotation marks and citations omitted). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Woods*, 578 U.S. at 117 (internal quotation marks and citations omitted).

## V. Discussion

In Claim 1, Mr. Ellis alleges his trial attorney was ineffective because she failed to serve a 21-day notice on the Commonwealth of her intent to introduce DNA evidence. Dkt. 2 at 5.

7

Petitioner argues this prejudiced him because DNA test results would have shown his DNA was not on the victim's fingernails and therefore refuted Karen Farmer's testimony that Mr. Ellis' face was scratched during his altercation with the victim. *Id.* at 7. Mr. Ellis also contends that he "could have been an accessory 'after the fact' which would have been punished as a [lesser] Class 6 felony." *Id.* at 8. Mr. Ellis raised these issues in his state habeas proceedings in the circuit court and on appeal to the Supreme Court of Virginia.[3] Dkt. 10-4 at 31 to 32. In reviewing his claims, the circuit court found, in relevant part, that:

> Ellis has failed to support his claim with a copy of the DNA results in question. Code § 8.01-654(B)(2) requires that a habeas corpus petition "shall contain all allegations the facts of which are known to petitioner at the time of filing." Because Ellis did not include a copy of the DNA results with his petition, the Court finds that his allegations in Claim 1 contain inadequate facts to allow this Court to evaluate that claim, such that it must be dismissed.
>
> . . .
>
> Furthermore, the Court finds from the record, including trial counsel's sworn affidavit, that trial counsel never sought to admit any DNA evidence, so her failure to abide by a 21-day notice requirement as a prerequisite for the admission of such evidence is not irrelevant [sic].
>
> . . .
>
> Furthermore, regarding the alleged scratch under Ellis's eye, the Court notes that "defense [counsel] admitted Mr. Ellis's booking photos as Defense exhibit J," which counsel submits showed "that there was no scratch on his face." Through that exhibit, trial counsel was able to use those photographs to impeach a key aspect of Karen Farmer's testimony. Specifically, during the cross-examination of Karen Farmer, counsel got that witness to admit that Ellis did not have a visible scratch on his face in the booking photographs.
>
> . . .
>
> Moreover, the Court notes that Ellis's arguments on this DNA issue only attacks the evidence that he was the shooter[] and therefore ignores the fact that the jury could have found him guilty of murder on a concert of action or principal in the

---

[3] The Virginia Supreme Court summarily refused Mr. Ellis' petition for appeal. "When a state appellate court summarily affirms a reasoned lower–court decision, or refuses a petition for review, then under *Ylst*, a federal habeas court is to 'look through' the unexplained affirmance to examine the 'last reasoned decision' on the claim, assuming that the summary appellate decision rests on the same ground." *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 525-26 (4th Cir. 2016) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04, 806 (1991)). Here, the circuit court's November 9, 2023, order denying and dismissing the state habeas petition is the last reasoned decision. See Dkt. 10-4 at 1 to 19.

second-degree theory of liability. The record also contains compelling evidence to support the conclusion that the jury did find Ellis guilty on a concert of action theory of guilt. During deliberations, the jurors asked multiple questions about principal in the second-degree liability, indicating that the jurors were clearly deliberating about the identity of the shooter. Because Michael Turner testified at trial that Daniel Farmer had confessed to shooting the victim, the jury may well have concluded that Ellis was not the shooter[] but still voted to convict based on his role in the planning and execution of the robbery itself. Therefore, even if the certificate of analysis that showed the absence of Ellis's DNA underneath the victim's fingernails was properly admitted into evidence, the Court finds that that evidence would have had no impact on this alternative theory of Ellis's guilt because that evidence was incapable of raising any doubt as to whether Ellis acted in concert with Daniel Farmer to commit the robbery.

. . .

Accordingly, the Court finds that Ellis has failed to show a reasonable probability that, but for counsel's actions regarding the DNA evidence regarding the victim's fingernails, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Because Claim 1 satisfies neither the performance nor the prejudice prong of *Strickland*, that claim is now dismissed.

Dkt. 10-4 at 5-8.

The circuit court's analysis of Claim 1 was reasonable. As the circuit court found, Mr. Ellis' counsel impeached Karen Farmer with the booking photograph that was admitted into evidence. Dkt. 10-4 at 6. Moreover, the DNA evidence would not have negated culpability by either a concert-of-action or principle-in-the-second-degree theory of guilt, despite Mr. Ellis' contention that he could have been convicted as an accessory after-the-fact.[4] *See* Dkt. 2 at 8.

---

[4] In Virginia, a defendant must prove three elements in order to be convicted as an accessory after the fact:

> First, the felony must be complete. Second, the accused must know that the felon is guilty. Third, the accused must receive, relieve, comfort, or assist the felon. It is essential that the accused, at the time he assists or comforts the felon, has notice, direct or implied, that the felon committed the crime.

*Commonwealth v. Dalton*, 524 S.E.2d 860, 862 (Va. 2000). Mr. Ellis' own testimony at trial was to the contrary. He testified that "[e]verything [he] learned about the case was from the media," and what he read and what was said "implicated [him] as the guy" and he "couldn't believe it, like, there's no way." State Court Records, Tr. of March 4, 2020, at 108 (on file with the Court's staff attorney). Mr. Ellis testified that he did not know the victim, was never around the victim, "never met him;" did not "participate in any type of arranged robbery;" never spoke to Daniel Farmer

Therefore, the state court's decision was not objectively unreasonable, not contrary to or an unreasonable application of established federal law, nor based on an unreasonable determination of the facts. *See Burr v. Jackson*, 19 F.4th 395, 403 (4th Cir. 2021). Accordingly, Claim 1 will be dismissed.

In Claim 2, Mr. Ellis alleges that his counsel's cross-examination of Lucretia Robinson was ineffective because counsel did not impeach Ms. Robinson with her criminal history or copies of interviews Robinson had given to law enforcement officers. Dkt. 2 at 9-13. Mr. Ellis argues that Ms. Robinson's "version[] of events changed with each interview" and that transcripts of her interviews would have been fertile grounds for impeachment materials. *Id.* The circuit court dismissed this claim finding that counsel, not Mr. Ellis, "was responsible for deciding the best defense strategy." Dkt. 10-4 at 8-9.

> Matters of trial strategy, such as deciding which questions to ask a witness on cross examination, cannot be second guessed in a habeas proceeding. *Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978) (noting that decisions concerning which questions to ask a witness on cross examination cannot be second guessed in a habeas proceeding).
>
> . . .
>
> First, on the issue of the production of transcripts of the interviews of Robinson, the Court notes that counsel avers in her sworn affidavit that "Mr. Ellis never asked me to have transcripts made of Ms. Robinson's interviews. [Mr. Ellis] was very much intent on getting transcripts of Ms. Farmer's interviews (which we did do)[] but never requested that Ms. Robinson's interviews be transcribed."
>
> . . .
>
> On the issue of impeaching Robinson based on her criminal history, the Court notes that counsel has averred that, because "Robinson testified while wearing her jail uniform, shackled, chained, and cuffed" with "her defense attorney standing right next to her," counsel believed that it was sufficiently "clear to the jurors that

---

"about robbing anybody, planning any robbery;" did not go anywhere with Daniel Farmer "that night;" and that he only became aware of the murder and robbery through text messages and phone calls because he had left the area and had started a new job in Waynesboro. *Id.* at 101-02. Moreover, the defense theory at trial, which was consistent with Mr. Ellis's testimony, was that he was nowhere near the scene of the crimes and that he had no knowledge of the crimes until others told him about them by texts and phone calls.

she was an alleged criminal." Moreover, counsel also asserts that she "did not question Ms. Robinson as to her criminal history on cross-examination because at that time, the Defense still had plans to call her in our case." "Strategically, [counsel] didn't want to take a chance of discrediting her further to the jurors based on her extensive criminal history, when [the defense] still planned on having her testify in our case later in the trial." . . . Given that trial counsel planned to call Robinson as a favorable witness at a later time, the Court finds that counsel's election not to "discredit [Robinson] in every way possible to the jury one day[] but then call her []as [her] own witness the next day" was eminently reasonable.

. . .

Finally, the Court finds that the record, including the affidavit of counsel, demonstrates that trial counsel thoroughly questioned Robinson about her prior inconsistent statements during cross examination. On the issue of whether Ellis returned from the scene of the murder with a gun, counsel correctly states that she got Robinson to admit that that she had previously left out that crucial detail in some of her prior statements. Ellis's counsel got Robinson to admit to having changed her story on several occasions, as Robinson admitted to the jury that she left out many details in her early interviews. Accordingly, the Court finds that trial counsel's cross-examination of Robinson resulted in a key witness for the Commonwealth admitting to the jury that she had [ ] "not been honest throughout her various interviews" with the authorities—admissions that were clearly helpful for the defense. The Court finds that trial counsel also got Robinson to state where precisely their vehicle was located when Ellis allegedly attempted to discard the murder weapon. Because the murder weapon was never recovered after extensive searches by investigators in the area described by Robinson, that hole in the Commonwealth's case allowed counsel to argue that there was "no direct physical evidence that link[ed] my client to the crime." . . . And finally, Counsel also got Robinson to state that, while she lived with Daniel and Karen Farmer at the relevant time, she never heard any talk about robbing the victim, nor had she ever heard the victim's name—testimony that tended to discredit Karen's testimony that those conversations [took] place in that home prior to the murder. In summary, the Court finds that the record supports the conclusion that trial counsel conducted a reasonable and effective cross-examination of Lucretia Robinson.

Dkt. 10-4 at 8-11.

This Court finds that the circuit court's analysis, and subsequent rejection, of Claim 2 was reasonable. Accordingly, Claim 2 will be dismissed.

In Claim 3, Mr. Ellis alleges that his counsel was ineffective because she failed to investigate and subpoena Mable Lanham as a rebuttal witness to discredit Lucretia Robinson. Dkt. 2 at 13-16. Mr. Ellis argues that Lanham's testimony would have rebutted Ms. Robinson's

11

testimony about the timing of the attempted robbery and murder, as well as Mr. Ellis' involvement in those crimes. *Id.* The state court found the claim had no merit:

> As an initial matter, the Court finds that Claim 3 must fail because Ellis has failed to provide this Court with an affidavit of Lanham's expected testimony if she had been called as a witness for the defense at trial. . . . [W]ithout a proffer of Lanham's expected testimony in the form of a sworn affidavit, the Court must find that Claim 3 contains inadequate facts to allow this Court to evaluate that claim such that it must be dismissed.
>
> . . .
>
> Even if this Court could rely on Lanham's statements from Investigator Johnson's report to evaluate this claim, the Court finds that Ellis has failed to demonstrate that Lanham would have been a beneficial witness for the defense. In that report, Lanham, the next-door neighbor of the victim, allegedly told investigators that she went to bed at 9:00 p.m. on the night of the murder and woke up to a whistle-like sound around 10:00 p.m. Lanham also claimed to see "flashing lights" at that time. When asked if she saw any vehicles outside that were "not normally there," Lanham told investigators that "vehicles come and go from the residence all the time, but she didn't see anything unusual" that night.
>
> Ellis contends that, by counsel's failure "to call Lanham as a potential rebuttal witness, the jury was left to believe Robinson's version of events, which ultimately led to Petitioner being convicted." Specifically, he alleges that counsel "should have pointed out that it is possible that Robinson was at the location with Daniel Farmer, and not Petitioner. For example, if Lanham lived next door to the victim, and Robinson was parked on her property, as she claimed, it was impossible for Petitioner to be gone for less than an hour." The Court finds that Ellis has not provide[d] a cogent explanation for how counsel could have used Lanham's statements above to impeach Robinson's testimony about Ellis's (or even Robinson's) involvement in the robbery and murder.
>
> Furthermore, the Court notes that trial counsel avers that Lanham's expected testimony would not have been beneficial to the defense. First, counsel correctly notes that the evidence was essentially undisputed that the victim was killed right around 10:36 p.m., when the victim pleaded with his parents for help with his fatal gunshot wounds. Thus, the Court finds that Lanham's ability to testify that she heard a whistle around 10:00 p.m. and saw nothing unusual at that time would not help the defense's case in any material way. Second, the Court finds that Lanham's testimony about what she heard at 10:00 p.m. "wouldn't have impeached Ms. Robinson's testimony" that she, Daniel Farmer, and Ellis were still at the Farmer's residence at that time, as nothing in the investigator's notes about Lanham calls that into question.
>
> . . .
>
> Finally, while Ellis suggests that counsel should have pointed out to the jury that Lanham perhaps saw Robinson and Farmer outside her residence on the night in

12

question, the Court finds that such testimony would have undermined Ellis's own alibi evidence. Indeed, the defense's theory of the case was an alibi defense in which Ellis claims that Robinson drove him directly from the Farmer residence to his mother's house in Manassas, arriving around 10:00 p.m. The Court finds that trial counsel wisely rejected an opportunity to present evidence that would (or could) have placed Robinson at the scene of the crime, instead of with Ellis. . . . Therefore, even if Lanham's purported testimony could have been marginally useful, the Court finds that Ellis's counsel very reasonably elected not to introduce evidence that would have undermined Ellis's alibi defense.

Dkt. 10-4 at 12-14.

This Court finds that the circuit court's analysis, and subsequent rejection, of Claim 3 was reasonable. Accordingly, Claim 3 will be dismissed.

In Claim 4, Mr. Ellis alleges that his counsel was ineffective for failing to highlight inconsistencies in Karen Farmer's testimony on two grounds. Dkt. 2 at 16-18. First, counsel failed to challenge Ms. Farmer's testimony that Mr. Ellis told her that he had pistol-whipped the victim. Second, counsel failed to challenge Ms. Farmer's statement that she did not know when Mr. Ellis's booking photograph had been taken. *Id.* The state court disagreed:

> The Court finds that this claim is without merit, as it is plainly belied by the transcript of counsel's cross-examination of Karen Farmer. The Court notes that counsel correctly states in her affidavit that "the two examples Mr. Ellis provided as being statements the jury was not made aware of (Petitioner's Petition, p. 17), the pistol whipping and booking photos, are two things that were presented to the jury" through her cross examination of Karen Farmer. On the first point, counsel correctly states that counsel discredited Karen Farmer's testimony that Ellis pistol whipped the victim when she got the medical examiner to testify on cross-examination that the victim did not have any injuries consistent with that type of attack. In addition, trial counsel also got Karen Farmer to admit "on the stand that there were no scratch marks on his face in his booking photos," and that those photos were admitted into evidence as the defense's exhibit J. Thus, the record refutes the factual bases for Ellis's allegedly ineffective cross-examination claims.
> . . .
> Moreover, the Court finds from the record that trial counsel conducted an extensive cross-examination of Karen Farmer in which counsel attempted to impeach several aspects of her testimony against Ellis. "Defense counsel constantly must decide what questions to ask and how much time to spend on a particular witness. These are precisely the types of tactical decisions a court is not supposed to second guess." *Higgs v. United States*, 711 F. Supp. 2d 479, 515 (D. Md. 2010) (citing *Byram v.*

13

*Ozmint*, 339 F.3d 203,209 (4th Cir. 2003)).  The Court finds that trial counsel's handling of cross-examination was reasonable under such circumstances.

Dkt. 10-4 at 15-16.

This Court finds that the circuit court's analysis, and subsequent rejection, of Claim 4 was reasonable.  Accordingly, Claim 4 will be dismissed.

In Claim 5, Mr. Ellis alleges his counsel was ineffective by failing to object to the trial court's decision to circumscribe the defense's cross-examination of Karen Farmer.  Dkt. 2 at 18-21.  Specifically, he avers that his counsel's decision not to contest the trial court's refusal to declare Karen Farmer an adverse witness under the provisions of Code § 8.01-403 was a performance failure that prejudiced him.  *Id.*  The state court found that this claim had no merit.

> While Ellis alleges that trial counsel was ineffective, the Court notes that nearly all the facts in support of this claim are allegations of trial court error—specifically, that the trial court improperly denied Ellis and counsel the chance to prove that Karen Farmer should be treated as adverse pursuant to the provisions of [Va.] Code § 8.01-403. Ellis directly asserts that the trial court's actions subjected him and his counsel "to an untenable Catch-22" by effectively not letting the defense plead its case for treating Karen Farmer as an adverse witness. Thus, to the extent that Ellis has raised an allegation of trial error, the Court finds that that specific claim is barred by the rule of *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974).

> "A petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." *Id.* at 29, 205 S.E.2d at 682. "A prisoner is not entitled to use habeas corpus to circumvent the trial and appellate process for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction." *Id.* at 30, 205 S.E.2d at 682.

> . . .

> Because Ellis could have[,] but failed to raise any allegations of trial error related to this claim either at trial or on direct appeal,[5] the Court finds that claim is not cognizable in habeas corpus and is now dismissed.

---

[5] The footnote in the order reads, "While Ellis did raise the separate, but related, issue on appeal that the trial court [should] have treated Karen Farmer as adverse under the provisions of Code § 8.01–401, the Court of Appeals found that Mr. Ellis failed to preserve that issue for appellate review. Mr. Ellis has not alleged that counsel was ineffective for failing to raise the Code § 8.01-401 issue at trial." Dkt. 10-4 at 17 (internal citations omitted).

14

Moreover, the Court finds that Claim 5 is without merit because, when the matter was in the trial court, Ellis's counsel argued extensively in favor of the defense's request to treat Karen Farmer as adverse pursuant to the provisions of [Va.] Code § 8.01-403. Therefore, to the extent that Ellis is claiming that his counsel failed to raise this issue at trial, the record provides definitive proof that this claim is without merit.

. . .

Finally, the Court finds that it cannot even begin to analyze whether Ellis suffered prejudice by counsel's failure to receive permission to treat Karen Farmer as an adverse witness because Ellis has not proffered what questions he wanted counsel to ask that witness but was not allowed to present, nor has he proffered what Karen Farmer's expected responses to those questions would have been. Nor has Ellis proffered how additional examination of that witness would have created a reasonable probability of a different result at trial. In other words, Ellis's conclusory allegations in Claim 5 contain inadequate facts to allow this Court to evaluate that claim, such that it must be dismissed.

Moreover, the Court finds from the record that trial counsel conducted an extensive cross examination of Karen Farmer in which counsel attempted to impeach several aspects of her testimony against Ellis. This fact establishes that Ellis was afforded an opportunity to confront Karen Farmer's testimony and serves as a key point of distinction between this case and the case cited in support by Ellis, *Chambers v. Mississippi*, 410 U.S. 284 (1973).

Dkt. 10-4 at 16-19.

This Court finds that the circuit court's analysis, and subsequent rejection, of Claim 5 was reasonable. Accordingly, Claim 5 will be dismissed.

## VII. Conclusion

For the foregoing reasons, the Court will **GRANT in part and DENY in part** Respondent's Motion to Dismiss (Dkt. 8). Claims 1-5 of the Petition will be dismissed with prejudice. The motion will be denied as to Claim 6, and Respondent will be directed to file a supplemental response. An appropriate Order shall issue.

Entered this 30th day of March 2026.
Alexandria, Virginia

_____ /s/
Patricia Tolliver Giles
United States District Judge

15